## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELIZABETH KRAMER, on behalf of herself and all others similarly situated,<br><br>       Plaintiff,<br><br>   v.<br><br>ROLF C. HAGEN (USA) CORP.,<br><br>       Defendant. | Case No. 1:21-cv-10748<br><br>**CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff ELIZABETH KRAMER ("Plaintiff" or "Plaintiff Kramer"), individually and on behalf of other similarly situated individuals, by and through her counsel, hereby files this Class Action Complaint for equitable relief and damages against Defendant ROLF C. HAGEN (USA) CORP. ("Defendant" or "Defendant Hagen"). Defendant Hagen deceptively markets and sells pet fish food products labeled as "VEGETARIAN" ("the Products"[1]) when, in reality, the Products contain non-vegetarian ingredients such as herring meal, krill, shrimp meal, and fish oil. Plaintiff Kramer is concerned that likeminded consumers, who wish to avoid purchasing products containing aquatic animal ingredients due to environmental and animal welfare concerns, will continue to purchase the Products, deceived by Defendant Hagen's "VEGETARIAN" label. Plaintiff Kramer alleges the following based upon information, belief, and the investigation of her counsel:

---

[1] The "Products" include all Fluval pet food products that are marketed as "vegetarian" but contain non-vegetarian ingredients. The Products include, but are not limited to, the following varieties: Fluval Vegetarian Flakes Fish Food and Fluval Vegetarian Pellets Fish Food. The Products also include any additional Fluval products that fall within this definition, as revealed through discovery.

## INTRODUCTION

1.      "Vegetarian food does not contain any meat or fish."[2] This is not a controversial statement.[3]

2.      Defendant Hagen labels and advertises the pet food Products at issue in this case as "VEGETARIAN."

3.      Under any common definition of the word "vegetarian," Defendant Hagen's uniform marketing representations are false and deceptive because the Products contain various animals as ingredients.

4.      This is no unintentional error. Reviews of the Products on Amazon, for example, show that consumers have been deceived by the "VEGETARIAN" label and have called out Defendant Hagen for its deceptive advertising, but Defendant Hagen continues to deceptively advertise the Products as "VEGETARIAN."

5.      Defendant Hagen labels and advertises the Products as "VEGETARIAN" in order to sell more of the Products, and to sell them at higher prices, to consumers who seek out vegetarian food products for their pets.

6.      These target purchasers include the significant population of consumers who—because of concerns for pet health, animal welfare generally, and sustainability—are becoming more interested in and aware of how their pets' food is produced.

7.      For example, consumers are increasingly concerned about the environmental sustainability of the commercial fish meal, krill, and shrimp industries. Consumers are also

---

[2] *Vegetarian*, Collins Dictionary, https://www.collinsdictionary.com/us/dictionary/english/vegetarian (last visited May 4, 2021).
[3] *See, e.g.*, *Vegetarian*, Merriam-Webster, https://www.merriam-webster.com/dictionary/vegetarian (last visited May 4, 2021) (defining "vegetarian" as "not containing meat: consisting wholly of vegetables, fruits, grains, nuts, and sometimes eggs or dairy products"); *What Is a Vegetarian?*, Vegetarian Society, https://vegsoc.org/info-hub/definition/ (last visited May 4, 2021) ("A vegetarian diet does not include . . . meat or poultry, fish or seafood, insects, gelatine or animal rennet, stock or fat from animals.").

concerned about the presence of environmental contaminants such as PCBs, dioxins, pesticides, and methyl mercury in wild-caught aquatic animals.

8.      Moreover, consumers who live with animals at home, particularly those with pet fishes, are concerned about the health and well-being of the aquatic animals used to produce human and pet food products.

9.      An example of Defendant Hagen's "VEGETARIAN" Product labeling is shown below, describing the Fluval Product as "VEGETARIAN" flakes for fish, a "MULTI VEGGIE formula" that is "Formulated With Spirulina, 4 Vegetables and Kelp for vibrant active fish":



10.     Only by searching the Products' labels to scrutinize the ingredient list on the back can a consumer discover that the Product is not "VEGETARIAN" at all; instead, the Products include non-vegetarian ingredients derived from animal flesh, including herring meal, krill, shrimp

meal, and fish oil.

11.     Reasonable consumers, seeing Defendant Hagen's prominent front-of-package "VEGETARIAN" representation, would expect that the Products are made using only vegetarian ingredients.

12.     Reasonable consumers are not expected to look beyond unambiguous representations on the front of the packaging to discover the truth from an ingredient list in small print on the back of the packaging.

13.     The false and misleading labeling and advertising of these Products as "VEGETARIAN" has enabled Defendant Hagen to sell more of the Products, at higher prices, to consumers throughout the United States, and to realize sizeable profits.

14.     In sum, Defendant Hagen is profiting by deceiving consumers into believing the Products are vegetarian, when in fact they contain herring meal, krill, shrimp meal, and fish oil.

15.     Within the respective statute of limitations (the "Class Period"), Plaintiff Kramer and members of the Class (described below) saw Defendant Hagen's "VEGETARIAN" misrepresentations when purchasing the Products. Plaintiff Kramer and members of the Class (described below) paid more for the Products based upon the misrepresentations than they otherwise would have paid, purchased the Products based upon the misrepresentations, and/or purchased more of the Products than they would have if they had known the truth about Defendant Hagen's use of fish meal and other animal ingredients in producing the Products.

16.     As a result, Plaintiff Kramer and Class members suffered injury. Contrary to representations on the Products' labeling and advertising, consumers received Products that were not "VEGETARIAN."

17.     Defendant Hagen's false and misleading representations violate the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785; California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*; and California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210. Defendant Hagen's false and misleading representations also violate the consumer protection statutes of the states in the Multistate Subclass (*see infra* Count IV), as well as the common laws of all states where the Products are sold.

18.     Because Defendant Hagen's labeling and advertising of the Products are materially deceptive about the true nature and quality of the Products, Plaintiff Kramer brings this deceptive advertising case on behalf of a nationwide Class of consumers who purchased the Products, along with a subclass who purchased the Products in California and a subclass who purchased the Products in additional enumerated states, and seeks relief including an injunction, actual damages, interest, costs, and reasonable attorneys' fees.

19.     Members of the proposed Class and subclasses continue today to purchase Products misrepresented as "VEGETARIAN." These consumers will continue to be deceived unless Defendant Hagen's conduct is stopped.

## **JURISDICTION AND VENUE**

20.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA"). Plaintiff Kramer is a citizen of California. There are at least 100 members in the proposed plaintiff class, including citizens of all 50 states and the District of Columbia.

21.     On information and belief, Defendant Hagen is a citizen of the Commonwealth of Massachusetts.

22.     The amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

23.     This Court has personal jurisdiction over Defendant Hagen, which has its principal place of business in Mansfield, Massachusetts.

24.     Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading labeling and advertising regarding the nature and quality of the Products and sales of the Products at issue, occurred within this District.

## PARTIES

25.     Defendant Hagen is a Massachusetts business corporation that maintains its principal place of business in Mansfield, Massachusetts.

26.     Defendant Hagen advertises, markets, and distributes the Products throughout the U.S., and has authorized retailers of the Products in all 50 states and the District of Columbia.

27.     Defendant Hagen manufactures and/or causes the manufacture of the Products, and markets and distributes the Products throughout the United States. Defendant Hagen created and/or authorized the false and deceptive labeling and advertising of the Products.

28.     On March 4, 2021, Plaintiff Kramer sent a letter via U.S. Certified Mail to Defendant Hagen, detailing the claims and allegations set forth in this Complaint.

29.     At all times mentioned herein, Plaintiff Kramer was, and is, an individual consumer over the age of 18. Plaintiff Kramer is a resident of Los Angeles County, California. Within the Class Period, Plaintiff Kramer purchased Defendant's products labeled "FLUVAL VEGETARIAN FLAKES" from Amazon on three separate occasions: November 7, 2019; April 7, 2020; and August 15, 2020.

30.     In deciding to make her purchases, Plaintiff Kramer saw, relied upon, and reasonably believed Defendant Hagen's unambiguous "VEGETARIAN" representation. The

representation was both visible on the Product packaging and included in the Amazon product description, as depicted below:



31.    Plaintiff Kramer was willing to pay the requested price for the Products because she expected the Products to be vegetarian, and therefore produced without the use of fish meal or other ingredients derived from animal flesh, such as herring meal, krill, shrimp meal, and fish oil.

32.    Plaintiff Kramer did not see the ingredient list until after her final purchase of the Products.

33.    Had Plaintiff Kramer known at the time of her purchases that the Products were made using fish meal and other animal ingredients, she would not have purchased or continued to purchase the Products.

34.    Plaintiff Kramer continues to seek out and purchase vegetarian fish food products and intends to do so in the future. At this time, she does not purchase Defendant Hagen's Products because she no longer understands them to be "VEGETARIAN." Defendant Hagen's misrepresentations, moreover, have caused Plaintiff Kramer to doubt the veracity of such labels in the marketplace.

35.     Plaintiff Kramer wishes to be able to purchase Defendant Hagen's Products as an option among vegetarian fish foods, and therefore wishes to see the Products match the representations made about them, *i.e.*, to be "VEGETARIAN." Plaintiff Kramer is concerned that likeminded consumers, members of her proposed class, are currently purchasing, and will continue to purchase, the Products, deceived by the "VEGETARIAN" representations, unless Defendant's conduct is enjoined.

## FACT ALLEGATIONS

36.     American consumers increasingly and consciously seek out vegetarian pet food products, which are made without the use of ingredients derived from animal flesh, such as the flesh of aquatic animals.

37.     Fish meal and other aquatic animal products are commonly included in fish food, raising environmental concerns among those who keep fish as pets.

38.     Most commercial fish meal is made using small species of wild-caught fish, such as herring, as well as bycatch. Fish meal production is a significant contributor to over-fishing; according to Conservation International, approximately one in three ocean fisheries are overexploited or depleted.[4]

39.     A 2018 report by Greenpeace concluded that industrial fishing for krill—one ingredient in the Products—is posing an imminent threat to the Antarctic ocean, "putting an entire food web at risk" and paving the way for serious "damage [to] wildlife and protected ocean areas."[5]

---

[4]     Conservation International, *Transforming Wild Fisheries and Fish Farming*, https://www.conservation.org/priorities/transforming-wild-fisheries-and-fish-farming?gclid=Cj0KCQjw0caC BhCIARIsAGAfuMx_NVzUACGRiscKD5_-3LQV5pfD4knfiRFLLRyRyXig09J5_v23RYQaAnBBEALw_wcB (last visited May 4, 2021).

[5]     *Licence to Krill*, Greenpeace International (Mar. 12, 2018), https://www.greenpeace.org/international/publication/15255/licence-to-krill-antarctic-krill-report/.

40.    Both wild-caught and farmed fish are subject to inhumane slaughter methods. The European Union Scientific Panel on Animal Health and Welfare concluded that "many existing commercial killing methods expose fish to substantial suffering over a prolonged period of time."[6] The methods in question may include asphyxiation in air or on ice, and gill-cutting, without prior stunning, so that the fish bleed to death.[7]

41.    Defendant Hagen's Products also contain shrimp meal. Shrimp farms around the world routinely employ eyestalk ablation, an industry practice in which the eyestalk gland on female shrimps is macerated or destroyed to stimulate spawning. The shrimp industry is also plagued by sustainability issues, from the overuse of antibiotics[8] to the destruction of vital mangrove habitats[9] and endangered sea turtle populations.[10]

42.    Defendant Hagen knows that, because of concerns like these, consumers who enjoy fish as pets seek out and will pay more for fish food products that they believe to be vegetarian and therefore to contain no fish meal or other animal flesh. To capture this market, Defendant Hagen prominently labels the Products with the claim "VEGETARIAN."

## I.    Defendant Falsely Represents That the Products Are "VEGETARIAN."

43.    The retail packaging and online marketing of the Products (*e.g.*, on Amazon.com) prominently feature the claim "VEGETARIAN."

---

[6] *Opinion of the Scientific Panel on Animal Health and Welfare (AHAW) on a request from the Commission related to welfare aspects of the main systems of stunning and killing the main commercial species of animals*, European Food Safety Authority (adopted June 15, 2004), https://www.efsa.europa.eu/en/efsajournal/pub/45.

[7] *Slaughter of farmed fish*, fishcount.org.uk, http://fishcount.org.uk/farmed-fish-welfare/farmed-fish-slaughter (last visited May 4, 2021).

[8] David Barboza, *In China, Farming Fish in Toxic Waters*, N.Y. Times (Dec. 15, 2007), https://www.nytimes.com/2007/12/15/world/asia/15fish.html.

[9] Alister Doyle, *Mangroves under threat from shrimp farms: U.N.*, Reuters (updated Nov. 14, 2012), https://www.reuters.com/article/us-mangroves-mangroves-under-threat-from-shrimp-farms-u-n-idUSBRE8AD1EG20121114.

[10] Juliet Eilperin, *Shrimping, not oil, causes hundreds of turtles to strand in the gulf*, Washington Post (May 25, 2011), https://www.washingtonpost.com/national/shrimping-not-oil-causes-hundreds-of-turtles-to-strand-in-the-gulf/2011/05/25/AGmOPXBH_story.html.

44. The Products' back-label ingredient list does not remedy the deception to consumers caused by marketing the products as "VEGETARIAN" on the front label and on the top of the webpages where the Products are sold.

45. Reviews of the Products, for example, show that consumers rely on the prominent and unambiguous "VEGETARIAN" claims to their detriment, and learn the truth only after purchase, if at all.[11]

> ★☆☆☆☆ **It's NOT VEGETARIAN!!!**
> Reviewed in the United States on July 6, 2020
> Size: 4.94-Ounce | Product Packaging: Standard Packaging | **Verified Purchase**
>
> These flakes may be healthy/nutritious, but they're ABSOLUTELY NOT vegetarian. They aren't even kosher (which is what we bought a "vegetarian" fish food fo, so we could feed our fish on sabbath without having to handle unclean creatures (like shrimp and krill).
>
> In tye end, this product's labelling as "vegetarian" is FALSE ADVERTISING, and all responsible vendors should PULL IT FROM THEIR SHELVES. Shrimp and krill (tiny, shrimp-like sea creatures) are not a part of any vegetarian diet!
>
> 

46. To make matters worse, on the Products' website, Defendant Hagen promotes the health benefits of the Products' purportedly "VEGETARIAN" ingredients:

- "Whether you are keeping herbivores, carnivores, or omnivores, all fish will benefit from the rich variety of vegetables found in Fluval Vegetarian Flakes."[12]

- "Multiple vegetable formula contains potato, broccoli, cabbage, carrot, garlic and spinach."[13]

47. On the Products' website, Defendant Hagen does ***not*** list the Products' non-

---

[11] Amazon Customer Review by Heather Hercules (July 6, 2020), https://www.amazon.com/gp/customer-reviews/RG6VLCLSHAY57/ref=cm_cr_dp_d_rvw_ttl?ie=UTF8&ASIN=B00G3BVPP4.
[12] *Vegetarian Flakes 4.94 oz (140 g)*, Fluval, https://fluvalaquatics.com/us/product/vegetarian-flakes-3/ (last visited May 4, 2021).
[13] *Id.*

vegetarian ingredients,[14] increasing consumer confusion about the purportedly "VEGETARIAN" Products.

48.     It is well accepted that vegetarian food does not contain any meat or fish.[15] The Vegetarian Society defines a "vegetarian diet" as one that does not include "fish or seafood" (among other animal products).[16] The Merriam-Webster definition of the adjective "vegetarian" is "not containing meat: consisting wholly of vegetables, fruits, grains, nuts, and sometimes eggs or dairy products."[17] The Cambridge Dictionary defines "vegetarian" as "not eating or including meat" and also provides an example sentence that explicitly contrasts vegetarian food with fish products: "The restaurant's very good for fish, but I'd give their vegetarian options a miss."[18]

49.     Contrary to Defendant Hagen's "VEGETARIAN" claims, the Products contain ingredients that are not vegetarian: herring meal, krill, shrimp meal, and fish oil.

50.     Thus, Defendant Hagen's "VEGETARIAN" claims deceive reasonable consumers into believing that the Products do not contain fish meal or other animal ingredients.

## II.    Defendant Hagen's "VEGETARIAN" Claims Are Material to Consumers.

51.     Consumers are aware of, and concerned about, the health, animal welfare, and sustainability impacts of eating aquatic animal products and of feeding such products to their pets.

52.     For these and other reasons (such as adhering to religious customs), consumers seek out and are willing to pay more for pet food products that they believe are vegetarian.

---

[14] *Id.*

[15] *E.g.*, *supra* note 2, *Vegetarian*, Collins Dictionary ("Someone who is vegetarian never eats meat or fish. . . . Vegetarian food does not contain any meat or fish.").

[16] *See supra* note 3, *What Is a Vegetarian?*, Vegetarian Society.

[17] *See supra* note 3, *Vegetarian*, Merriam-Webster.

[18] *Vegetarian*, Cambridge English Dictionary, https://dictionary.cambridge.org/us/dictionary/english/vegetarian (last visited May 4, 2021).

53.     Consumers are further willing to pay more for products that contain neither fish meal nor other animal ingredients than for pet food products that do contain fish meal or other animal ingredients.

**III.     Defendant Hagen's "VEGETARIAN" Claims Mislead and Harm Consumers.**

54.     Defendant Hagen's conduct in labeling and advertising the Products as "VEGETARIAN" deceived and/or was likely to deceive the public. Consumers have been, and continue to be, deceived into believing that the Products do not contain fish meal or other ingredients derived from animal flesh, when in fact the Products contain herring meal, krill, shrimp meal, and fish oil.

55.     Defendant Hagen deceptively and misleadingly conceals material facts about the Products, namely, that the Products are not vegetarian and do contain fish meal and other ingredients derived from animal flesh.

56.     Defendant Hagen knew, and knows, what representations it made on the Product labels and in the online advertising of the Products. Defendant Hagen also knew, and knows, how the Products are sourced and produced. Defendant Hagen thus knew, or should have known, the facts demonstrating that the Products were falsely advertised.

57.     To this day, Defendant Hagen continues to conceal and suppress the true nature, identity, sources, and methods of production of its Products.

58.     In making the false, misleading, and deceptive representations at issue, Defendant Hagen also knew and intended that consumers would choose to buy, and would pay more for, products promoted with the claim "VEGETARIAN," furthering Defendant Hagen's private interest of increasing the sales of the Products and decreasing the sales of competitors' products that are truthfully marketed.

59.    Had Defendant Hagen not made the false, misleading, and deceptive representations, Plaintiff Kramer and the Class members would not have been willing to pay the same amount for the Products they purchased, would have chosen competing products, and/or would not have purchased as much of the Products.

60.    Defendant Hagen's ongoing false and misleading labeling and advertising of the Products continues to cause harm to the consumers Plaintiff Kramer seeks to represent, and will continue absent injunctive relief.

61.    Consumers are at risk of real, immediate, and continuing harm if the Products continue to be sold using false and misleading labeling and advertising.

## CLASS ALLEGATIONS

62.    Plaintiff Kramer realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

63.    This action is maintainable as a class action under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure.

64.    The class definition(s) may depend on the information obtained throughout discovery. Notwithstanding, at this time, Plaintiff Kramer brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all consumers who purchased Defendant's Products (as defined herein) in the United States during the Class Period (the "Class").

65.    Included in the Class is a subclass of all persons who purchased Defendant Hagen's Products (as defined herein) within the State of California during the Class Period (the "California Subclass").

66.    Included in the Class is a subclass of all persons who purchased Defendant's Hagen's Products (as defined herein) within the following jurisdictions during the Class Period (the "Multistate Subclass"): Alabama, Alaska, Arizona, California, Connecticut, Delaware,

District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Dakota, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

67.    Excluded from the Class are (1) Defendant Hagen, any entity or division in which Defendant Hagen has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

68.    Plaintiff Kramer brings the Class pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3).

69.    Plaintiff Kramer reserves the right to amend the Class and/or Subclass definitions if further information and discovery indicate that the Class and/or Subclass definitions should be narrowed, expanded, or otherwise modified.

70.    All members of the Class, the California Subclass, and the Multistate Subclass were and are similarly affected by the deceptive labeling and advertising of Defendant Hagen's Products, and the relief sought herein is for the benefit of Plaintiff Kramer and members of the Class.

**I.    Numerosity.**

71.    At this time, Plaintiff Kramer does not know the number of the Class members. Based on the wide distribution of Defendant Hagen's Products, Plaintiff Kramer believes that the Class comprises many thousands of consumers. The number of consumers in the Class is so large as to make joinder impracticable, if not impossible. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

## II.    Commonality.

72.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

(a)    Whether Defendant Hagen is responsible for the labeling and advertising at issue;

(b)    Whether the labeling and advertising of the Products was unfair, false, deceptive, fraudulent and/or unlawful;

(c)    Whether Defendant Hagen breached a warranty created through the labeling and marketing of its Products; and

(d)    Whether Defendant Hagen's conduct as set forth above injured, and may continue to injure, Class members.

## III.    Typicality.

73.    Plaintiff Kramer's claims are typical of those of the Class, as the claims arise from the same course of conduct by Defendant Hagen, and the relief sought within the Class is common to the Class members. Plaintiff Kramer, like all members of the Class, relied on Defendant Hagen's false and misleading "VEGETARIAN" representations and then paid the requested price for "VEGETARIAN" fish food. There are no defenses available to Defendant Hagen that are unique to Plaintiff Kramer.

## IV.    Adequacy.

74.    Plaintiff Kramer will fairly and adequately protect the interests of the Class. Plaintiff Kramer is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, and she has retained counsel competent and experienced in both consumer protection and class-action litigation. Plaintiff Kramer and her counsel will fairly and adequately protect the interests of the members of the Class. Undersigned

counsel have represented consumers in a variety of actions seeking relief from fraudulent and deceptive practices.

**V.      Predominance and Superiority of Class Action.**

75.      The prerequisites to maintaining a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) are met because questions of law and fact common to each Class member predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

76.      Individual joinder of the Class members is not practicable.

77.      Each Class member has been damaged and is entitled to recovery as a result of the violations alleged herein. Because the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual Class members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

78.      Plaintiff Kramer is unaware of any difficulties in managing this case that would preclude proceeding as a class action.

79.      Certification also is appropriate under Rule 23(b)(2) because Defendant Hagen acted, or refused to act, on grounds generally applicable to the Class.

80.      Further, given the large number of consumers of Defendant Hagen's Products, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

## CAUSES OF ACTION

### COUNT I

**Violations of the California Consumer Legal Remedies Act**
**(On behalf of Plaintiff and the California Subclass)**

81.    Plaintiff Kramer repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

82.    This cause of action is brought pursuant to California's Consumer Legal Remedies Act, Cal Civ. Code §§ 1750-1785 (the "CLRA").

83.    Plaintiff Kramer and the California Subclass are "consumers," as the term is defined by Cal. Civ. Code § 1761(d), because they bought the Products for personal, family, or household purposes.

84.    Plaintiff Kramer, the other members of the California Subclass, and Defendant Hagen have engaged in "transactions," as that term is defined by Cal. Civ. Code § 1761(e).

85.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant Hagen in transactions intended to result in, and which did result in, the sale of goods to consumers.

86.    As alleged more fully above, Defendant Hagen has violated the CLRA by falsely representing to Plaintiff Kramer and the California Subclass that the Products are "VEGETARIAN," when in fact the Products contain herring meal, krill, shrimp meal, and fish oil.

87.    As a result of engaging in such conduct, Defendant has violated Cal. Civ. Code §§ 1770(a)(5) and (a)(9).

88.    CLRA § 1782 Notice: On March 4, 2021, a CLRA demand letter was sent on behalf of Plaintiff Kramer to Defendant Hagen via certified mail that provided notice of Defendant

Hagen's violation of the CLRA and demanded that within 30 days of that date, Defendant Hagen correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein. The letter also stated that if Defendant Hagen refused to do so, a complaint seeking damages in accordance with the CLRA would be filed. Defendant Hagen received the letter on March 10, 2021 and has failed to comply. Accordingly, pursuant to Cal. Civ. Code § 1780(a)(3), Plaintiff Kramer, on behalf of herself and all other members of the California Subclass, seeks compensatory damages, punitive damages, injunctive relief, and restitution of any ill-gotten gains due to Defendant Hagen's acts and practices.

## COUNT II
### Violations of California's False Advertising Law
### (On behalf of Plaintiff and the California Subclass)

89.     Plaintiff Kramer repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

90.     As alleged more fully above, Defendant Hagen has falsely advertised the Products by falsely labeling and marketing the Products with the term "VEGETARIAN."

91.     At all material times, Defendant Hagen engaged in a scheme of offering the Products for sale to Plaintiff Kramer and the other members of the California Subclass through, *inter alia*, commercial marketing and advertising, the Internet, the Products' packaging and labeling, and other promotional materials and offers for sale for the Products.

92.     The misrepresentations and non-disclosures by Defendant Hagen of the material facts detailed above constitute false and misleading advertising, and therefore constitute a violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* (the "FAL").

93.     Said advertisements and inducements were made within the State of California and come within the definition of advertising contained in the FAL in that such promotional materials

were intended as inducements to purchase the Products and are statements disseminated by Defendant Hagen to Plaintiff Kramer and the other California Subclass members that were intended to reach Plaintiff Kramer and other California Subclass members. Defendant Hagen knew, or in the exercise of reasonable care should have known, that these representations were misleading and deceptive.

94.     The above acts of Defendant Hagen did and were likely to deceive reasonable consumers, including Plaintiff Kramer and the other California Subclass members, by obfuscating the nature, quality, and ingredients of the Products, in violation of the "misleading" prong of the FAL.

95.     Plaintiff Kramer and the other California Subclass members have suffered injury in fact and have lost money or property as a result of Defendant Hagen's violations of the FAL.

96.     Pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17535, Plaintiff Kramer and the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant Hagen (1) to provide restitution to Plaintiff Kramer and other California Subclass members; (2) to disgorge all revenues obtained as a result of violations of the FAL; (3) to cease its unlawful and deceptive acts; and (4) to pay the attorneys' fees and costs of Plaintiff Kramer and the California Subclass.

## COUNT III

### Violations of California's Unfair Competition Law
### (On behalf of Plaintiff and the California Subclass)

97.     Plaintiff Kramer repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

98.    By committing the acts and practices alleged herein, Defendant Hagen has violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210 (the "UCL"), by engaging in unlawful, fraudulent, and unfair conduct.

99.    Defendant Hagen has violated the UCL's proscription against engaging in unlawful conduct as a result of (1) violations of the CLRA, Cal. Civ. Code §§ 1770(a)(5) and (a)(9), as alleged above; and (2) violations of the FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*, as alleged above.

100.    Defendant Hagen's acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

101.    As more fully described above, Defendant Hagen's misleading marketing, advertising, packaging, and labeling of Products is likely to deceive reasonable consumers. Indeed, Plaintiff Kramer and other California Subclass members were deceived regarding the Products' ingredients. Defendant Hagen's marketing, advertising, packaging, and labeling of the Products misrepresent or omit the true facts concerning the Products' benefits. Those acts are fraudulent business practices.

102.    Defendant Hagen's acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

103.    Plaintiff Kramer and other California Subclass members suffered a substantial injury by virtue of buying, and paying the requested price for, Products that were advertised and presented to them as "VEGETARIAN" but in fact were not.

104.    There is no benefit to consumers or competition from deceptively marketing and labeling products like the Products, which purport to be "VEGETARIAN" when they contain fish meal and other ingredients derived from animal flesh.

105.    The gravity of the consequences of Defendant Hagen's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives that exist in the marketplace, and such conduct is immoral, unethical, and/or unscrupulous, offends established public policy, and/or is substantially injurious to Plaintiff Kramer and other California Subclass members.

106.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff Kramer and the California Subclass seek an order of this Court that, *inter alia*, requires Defendant (1) to provide restitution to Plaintiff Kramer and the other California Subclass members; (2) to disgorge all revenues obtained as a result of violations of the UCL; (3) to cease its unlawful and deceptive acts; and (4) to pay the attorneys' fees and costs of Plaintiff Kramer and the California Subclass.

107.    In addition, Defendant Hagen continues engaging in the deceptive conduct and, upon information and belief, will do so unless enjoined by this Court. Members of the California Subclass that Plaintiff Kramer seeks to represent are purchasing, and will continue to purchase, the misrepresented Products.

108.    The unfair and deceptive acts and practices of Defendant Hagen, as described above, present an ongoing threat to Plaintiff Kramer and the other members of the California Subclass.

## <u>COUNT IV</u>

**Deceptive Acts or Practices in Violation of State Consumer Protection Statutes**
**(On behalf of Plaintiff and the Multistate Subclass)**

109.    Plaintiff Kramer repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

110.    The consumer protection statutes of the states in the Multistate Subclass broadly prohibit deceptive acts or practices in the conduct of trade or commerce.

111.    Defendant Hagen's false, misleading, and fraudulent practices in marketing the Products, as alleged herein, violate each of the following consumer protection statutes to the extent that Defendant's Products have been marketed, and purchased by Multistate Subclass members, in each respective jurisdiction: Ala. Code § 8-19-5(27); Alaska Stat. § 45.50.471(a); Ariz. Rev. Stat. § 44-1522; Cal. Civ. Code § 1770(a); Conn. Gen. Stat. § 42-110b(a); Del. Code Ann. tit. 6 § 2513(a); D.C. Code § 28-3904; Fla. Stat. Ann. § 501.204; Ga. Code § 10-1-393(a); Haw. Rev. Stat. § 480-2(a); Idaho Code § 48-603; 815 Ill. Comp. Stat. Ann. § 505/2; Ind. Code § 24-5-0.5-3(a); Iowa Code § 714H.3(1); Kan. Stat. § 50-626(a); Ky. Rev. Stat. § 367.170; Me. Rev. Stat. Ann. tit. 5 § 207; Md. Comm. Law Code Ann. § 13-303(1); Mass. Gen. Laws Ch. 93A §§ 2(a), 9; Mich. Comp. Laws Ann. § 445.903(1); Minn. Stat. § 325F.69(1); Mo. Rev. Stat. § 407.020(1); Neb. Rev. Stat. § 59-1602; Nev. Rev. Stat. § 598.0915; N.H. Rev. Stat. § 358-A:2; N.J. Stat. Ann. § 56:8-2; N.M. Stat. Ann. § 57-12-3; N.Y. Gen. Bus. Law §§ 349(a), 350; N.C. Gen. Stat. § 75-1.1(a); N.D. Century Code §§ 51-15-02, 51-15-02.3; Ohio Rev. Code § 1345.02(a); Okla. Stat. Ann. tit. 15 § 753; 73 Pa. Stat. § 201-3(a); R.I. Gen. Laws § 6-13.1-2; S.D. Codified Laws § 37-24-6(1); Tex. Bus. & Com. Code §§ 17.46(a); Utah Code Ann. § 13-11-4(1); Vt. Stat. Ann. tit. 9 § 2453(a); Va. Code Ann. § 59.1-200(A); Wash. Rev. Code § 19.86.020; W. Va. Code § 46A-6-104; Wis. Stat. Ann. § 100.18(1); Wyo. Stat. Ann. § 40-12-105(a).

112.    Defendant Hagen violated these statutes by falsely and deceptively labeling and advertising its Products as "VEGETARIAN" when the Products contain non-vegetarian ingredients.

113.    Defendant Hagen's deceptive labeling and advertising was material to Plaintiff Kramer's and the Multistate Subclass members' decisions to purchase the Products, to purchase as much of them as they did, and to pay the requested price.

114.    Plaintiff Kramer and the Multistate Subclass members relied upon Defendant Hagen's deceptive labeling and advertising in purchasing the Products.

115.    Defendant Hagen intended for Plaintiff Kramer and the Multistate Subclass members to rely upon its deceptive labeling and advertising, and reasonable consumers would have relied upon Defendant Hagen's deceptive labeling and advertising.

116.    Defendant Hagen acted willfully, wantonly, and with reckless disregard for the truth.

117.    Plaintiff Kramer and the Multistate Subclass members have been injured in that they purchased the Products, paid the requested price, and received less than what they bargained and/or paid for.

118.    Plaintiff Kramer and the Multistate Subclass members are entitled to recover compensatory damages, restitution, punitive and special damages, treble damages, attorneys' fees and costs, and other appropriate injunctive and declaratory relief.

## <u>COUNT V</u>
### Breach of Express Warranty
### (On Behalf of Plaintiff and the Class)

119.    Plaintiff Kramer repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

120.    Defendant Hagen provided Plaintiff Kramer and other members of the Class with a written, express "VEGETARIAN" warranty.

121.    These affirmations of fact or promises by Defendant Kramer relate to the goods and became part of the basis of the bargain.

122.    Plaintiff Kramer and members of the Class purchased Defendant Hagen's Products believing them to conform to the express warranties.

123.    Defendant Hagen breached these warranties, resulting in damages to Plaintiff Kramer and other members of the Class, who bought the Products but did not receive the goods as warranted.

124.    As a proximate result of the breach of warranties by Defendant Hagen, Plaintiff Kramer and the other members of the Class did not receive goods as warranted. Moreover, had Plaintiff Kramer and the Class members known the true facts, they would not have purchased the Products, or would have purchased them on different terms, or would have purchased less.

125.    Plaintiff Kramer and the members of the Class therefore have been injured and have suffered damages in an amount to be proven at trial.

126.    Defendant Hagen is thus liable for breach of express warranty under the common laws of the states where the Products are sold, to the extent that Defendant's Products have been marketed, and purchased by Class members, in each respective state.

### COUNT VI

**Unjust Enrichment**
**(In the alternative, on behalf of Plaintiff and the Class)**

127.    Plaintiff Kramer repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

128.    As the intended, direct, and proximate result of Defendant Hagen's conduct, Defendant Hagen has been unjustly enriched through sales of the Products at the expense of Plaintiff Kramer and the Class members.

129.    Under the circumstances, it would be against equity and good conscience to permit Defendant Hagen to retain the ill-gotten benefits that it received from Plaintiff Kramer and the Class members, in light of the fact that the Products they purchased were not what Defendant represented them to be.

130.    Defendant Hagen is thus liable for unjust enrichment under the common laws of the states where the Products are sold, to the extent that Defendant's Products have been marketed, and purchased by Class members, in each respective state.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Kramer demands judgment on behalf of herself and the proposed Class providing such relief as follows:

A.    Certification of the Class, California Subclass, and Multistate Subclass proposed herein under Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3); appointment of Plaintiff Elizabeth Kramer as representative of the Class and Subclasses; and appointment of her undersigned counsel as counsel for the Class and Subclasses;

B.    A declaration that Defendant Hagen is financially responsible for notifying Class members of the pendency of this suit;

C.    An order enjoining Defendant Hagen's unlawful and deceptive acts;

D.    An order requiring an accounting for, and imposition of a constructive trust upon, all monies received by Defendant Hagen as a result of the unfair, misleading, fraudulent, and unlawful conduct alleged herein;

E.    An award of disgorgement pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17353 for members of the California Subclass;

F.    Monetary damages for members of the California Subclass pursuant to Cal. Civ. Code § 1780;

G.    Restitution, disgorgement, refund, and/or other monetary damages, including treble damages, together with costs and disbursements, pursuant to the applicable statutes and prejudgment interest at the maximum rate allowable by law;

H.    Monetary damages and statutory damages in the maximum amount provided by law;

I.    Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

J.    Awarding to Plaintiff Kramer and Class members reasonable attorneys' fees and costs as allowed by law; and

K.    Such further relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff Kramer hereby demands a trial by jury.

DATED: May 6, 2021

PONTIKES LAW, LLC

By: _____

Rebecca G. Pontikes (BBO # 637157)
Bryn A. Sfetsios, BBO # 688368
10 Tremont Street, 2nd Floor
Boston, MA 02108
rpontikes@pontikeslawllc.com
bsfetsios@pontikeslawllc.com
Telephone: (617) 357-1888
Facsimile: (857) 488-4020


RICHMAN LAW & POLICY

By: _____

Kim E. Richman (*pro hac vice* forthcoming)
krichman@richmanlawpolicy.com
Jay Shooster (*pro hac vice* forthcoming)
jshooster@richmanlawpolicy.com
1 Bridge Street, Suite 83
Irvington, New York 10533
Telephone: (718) 878-4707
Facsimile: (212) 687-8292


*Attorneys for Plaintiff and Proposed Class*